# EXHIBIT 3

# Goldsmith

Goldsmith Associates PLLC
100 Crescent Court, Suite 700
Dallas, TX 75201-2144
goldsmithpllc.com

Jason Goldsmith
Managing Member
Direct:  214.414.9452
Mobile: 214.616.8248
jason@goldsmithpllc.com

1 / 6

Thursday, August 7, 2025

Via Electronic Delivery & Overnight Courier (UPS #1Z21A9640194800961)

Quontic Bank
3105 Broadway, 2nd Floor
Astoria, NY 11106
Attention: James Hooper
Email: jhooper@quonticbank.com

Re: **NEXBANK LOAN # 64051981 / QUONTIC LOAN # 2107QB040496**
**FINAL DEMAND FOR REPURCHASE & INDEMNIFICATION**
**NOTICE TO PRESERVE DOCUMENTS IN ANTICIPATION OF LITIGATION**

James,

This firm is counsel to NexBank (the "Purchaser") and we provide this third and final demand (this "Final Demand") on its behalf pursuant to Subsection 7.01(d) of that certain Loan Purchase Agreement, dated January 31, 2022 (the "Agreement"), by and between Quontic Bank (the "Seller") and the Purchaser.[1]

On January 31, 2022 (the "Closing Date"), the Purchaser acquired the above referenced Mortgage Loan (the "Noticed Mortgage Loan") from the Seller subject to the terms and provisions of the Agreement and in reliance upon the representations and warranties made by the Seller therein. In Subsection 5.03(b)(v)(A) of the Agreement, the Seller expressly represented and warranted to the Purchaser that the Noticed Mortgage Loan "ha[d] not been affected by any error, . . . negligence, or similar occurrence by the Mortgagor or any Covered Person . . . in connection with the origination . . . of the [Noticed] Mortgage Loan."[2] In Subsection 5.03(c)(i)(G) of the Agreement, the Seller further represented and warranted to the

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Agreement.

[2] The Agreement broadly defines the term "Covered Person" to include not only the Seller, its Affiliates, and its and their respective shareholders, directors, officers, employees, contractors, agents, and other representatives, but also to include each and every other person or entity who, at any time prior to the date on which the servicing of the Noticed Mortgage Loan was transferred to the Purchaser or its subservicer, "held any right, title, or interest in, to, or under the [Noticed] Mortgage Loan, whether as a mortgagee, participant, pledgee, servicer, or otherwise," or who performed any "origination service," "settlement service," "title service," or "servicing" function in connection with the "application," "settlement," "refinancing," or "servicing" of the Noticed Mortgage Loan, or who was a "loan originator" or "servicer" of the Noticed Mortgage Loan, as each of those terms are defined pursuant 12 C.F.R. § 1024.2.

* Deal-tested attorneys who are secondary mortgage market experts.

16003.4288/61180v2

Goldsmith

\* Deal-tested attorneys who are secondary mortgage market experts.

2 / 6

Purchaser that the Noticed Mortgage Loan was secured by a Mortgage Instrument that "creates a binding, enforceable, subsisting, and valid first-priority lien" which is "properly perfected in accordance with all Applicable Laws of the jurisdiction where the Mortgaged Property is located." As discussed below, and as previously explained in the First Demand (defined below) and the Second Demand (defined below), the Noticed Mortgage Loan failed to conform with each of these representations and warranties for several reasons.

As previously explained in the First Demand and the Second Demand, the Mortgage Instrument related to the Noticed Mortgage Loan is not executed by all of the vested owners of the related Mortgaged Property and, to make matters worse, does not even identify all of the vested owners. For these reasons, and contrary to the representation and warranty made by the Seller in Subsection 5.03(b)(v)(A) of the Agreement, the Noticed Mortgage Loan is in fact subject to an error on the part of the Covered Person who prepared the related Mortgage Instrument and, in so doing, not only failed to identify all vested owners therein but also failed to obtain all vested owners' execution thereof. For the same reasons, and contrary to the representation and warranty made by the Seller in Subsection 5.03(c)(i)(G) of the Agreement, the Mortgage Instrument related to the Noticed Mortgage Loan does not (and cannot) create a binding, enforceable, subsisting, and valid first-priority lien on the related Mortgaged Property… let alone a lien which is (or could be) properly perfected in accordance with Applicable Laws of the jurisdiction where the related Mortgaged Property is located. Consequently, the Noticed Mortgage Loan is subject to two independent "Defects" for purposes of Subsection 7.01(d) of the Agreement: one based upon the failure of the Noticed Mortgage Loan to conform with the representation and warranty made by the Seller in Subsection 5.03(b)(v)(A) of the Agreement (the "<u>Subsection 5.03(b) Defect</u>"), and another based upon the failure of the Noticed Mortgage Loan to conform with the representation and warranty made by the Seller in Subsection 5.03(c)(i)(G) of the Agreement (the "<u>Subsection 5.03(c) Defect</u>").

On April 3, 2025, the Purchaser provided written notice to the Seller (the "<u>First Demand</u>") advising that the Noticed Mortgage Loan was subject to the Subsection 5.03(b) Defect and the Subsection 5.03(c) Defect (each, a "<u>Noticed Defect</u>" and collectively, the "<u>Noticed Defects</u>") and demanding that the Seller cure the Noticed Defects or repurchase the Noticed Mortgage Loan at the Repurchase Price, in each case not later than May 12, 2025 (the "<u>First Repurchase Deadline</u>") as expressly required by Subsection 7.01(d) of the Agreement.[3] Because the Seller failed to do so, on May 29, 2025, the Purchaser provided further written notice to the Seller (the "<u>Second Demand</u>") advising that the Seller not only was in continuing breach of the

---

[3] A copy of the First Demand is appended as <u>Exhibit A</u> hereto.

representations and warranties made in Subsection 5.03(b)(v)(A) and Subsection 5.03(c)(i)(G) of the Agreement (each, a "Representation Breach"), but further advising that the Seller also was in breach of the cure and repurchase obligations imposed by Subsection 7.01(d) of the Agreement (the "Repurchase Breach" and, together with each Representation Breach collectively, the "Seller Breaches").[4] As a professional courtesy, and in a good faith effort to resolve this matter amicably, the Purchaser even offered the Seller a last-chance opportunity to cure the Seller Breaches by repurchasing the Noticed Loan and paying the Repurchase Price and all Seller Payables set forth in the Second Demand not later than June 9, 2025 (the "Second Repurchase Deadline"). Once again, however, the Seller failed to do so and, as of the date hereof, has yet to do so.

Therefore, not only has the Seller been in continuing breach of the Agreement at all times since the Closing Date as a result of each Representation Breach, but the Seller also has been in continuing breach of the Agreement at all times since the First Repurchase Deadline as a result of the Repurchase Breach. For the foregoing reasons:

*1.    The Purchaser hereby demands that the Seller indemnify the Purchaser, in accordance with Subsection 7.05 of the Agreement, for all costs, damages, expenses, fees (including, without limitation, attorneys' fees), liabilities, and other losses that have been or hereafter are incurred by the Purchaser as a result of or relating to the Seller Breaches (collectively, "Indemnifiable Losses");*

*2.    The Purchaser hereby demands that the Seller pay the Purchaser, in accordance with Subsection 7.03 of the Agreement, for all default interest that has been or hereafter is accrued pursuant thereto (collectively, "Default Interest") on the Repurchase Price and all Indemnifiable Losses, Default Interest, and other amounts payable by the Seller in connection with or relating to the Seller Breaches (collectively, the "Seller Payables"); and*

*3.    The Purchaser hereby demands that the Seller cure the Seller Breaches not later than 3:00 p.m. (Central Time) on August 14, 2025 (the "Final Deadline"), by BOTH (A) repurchasing the Noticed Mortgage Loan from the Purchaser (the "Cure Repurchase") in accordance with Subsection 7.02 of the Agreement, AND (B) remitting payment of the Repurchase Price and all other Seller Payables (the "Cure Payment") to the Purchaser by wire transfer of immediately available funds to the following account:*

---

[4] A copy of the Second Demand is appended as Exhibit B hereto.

|  |  |
|---|---|
| Payment Amount: | $426,950.43[5] |
| Depository Name: | NexBank |
| Routing Number: | 311973208 |
| Account Name: | Wholesale Loan Clearing |
| Account Number: | 140250.01.060 |
| Reference: | Quontic Repurchase 64051981 |

Be advised that, in the event the Seller fails to cure the Seller Breaches before the Final Deadline, the Purchaser intends to commence litigation against the Seller in the United States District Court for the Northern District of Texas immediately following the expiration of the Final Deadline (the "Potential Litigation"). As such, *the Seller is hereby instructed to immediately take or cause to be taken — and to immediately instruct its Representatives[6] to immediately take or cause to be taken — any and all actions necessary to immediately preserve and indefinitely retain any and all communications (whether internal or external), contracts, data, diaries (including, without limitation, Outlook calendar appointments and meeting invitations), documents (including, without limitation, legal agreements), emails, files, instruments, messages (including, without limitation, those sent on mobile devices or exchanged on Bloomberg, Signal, Teams, WhatsApp, or other software platforms), notes, photographs, presentations, records, recordings, spreadsheets, texts, transcriptions, voicemails, and other materials, in each case whether stored in physical form or electronic format (collectively, "Records"), that refer to or relate to any of the following subject matters (collectively, the "Topics") in whole or in part:*

- Any version (draft, final, or amendment) of any Record that was or is received or prepared by or on behalf of the Mortgagor, the Seller, any Covered Person, or any of its or their respective Representatives, in connection with or relating to the application, processing, underwriting, insuring, closing, origination, financing, or servicing of the Noticed Mortgage Loan or any of the transactions or occurrences arising from or relating to any of the foregoing;

---

[5] As of the date hereof, the aggregate amount of the Cure Payment is $426,950.43, which includes the Repurchase Price in the amount of $419,538.74, plus Default Interest in the amount of $13,911.69 and Indemnifiable Losses in the amount of $3,500.00. For the avoidance of doubt, these figures are calculated based upon an assumption that the Seller effectuates the Cure Repurchase and remits the Cure Payment in strict accordance with the Agreement on or before the Final Deadline. Needless to say, these figures will continue to increase in the event the Seller fails to do so.

[6] For purposes hereof, the term "Representatives" is broadly defined to mean, each and every Person that is a shareholder, director, officer, employee, contractor, agent, or other representative of the Seller or any of its Affiliates.

Goldsmith

4 / 6

* Deal-tested attorneys who are secondary mortgage market experts.

Goldsmith

\* Deal-tested attorneys who are secondary mortgage market experts.

5 / 6

- Any version (draft, final, or amendment) of any Record that was or is received or prepared by or on behalf of the Seller or any of its Representatives in connection with or relating to the evaluation, negotiation, consummation, or performance of the sale and transfer of the Noticed Mortgage Loan pursuant to the Agreement or any of the transactions or occurrences arising from or relating to any of the foregoing;

- Any version (draft, final, or amendment) of any Record that was or is received or prepared by or on behalf of the Seller or any of its Representatives in connection with or relating to the First Demand, the Second Demand, this Final Demand, or any of the transactions or occurrences arising from or relating to any of the foregoing, including, without limitation, (1) any Records pertaining to any analyses or investigations of the Noticed Defects, (2) any Records pertaining to any attempts or requests to cure the Noticed Defects, and (3) any Records pertaining to any claims or demands to/from any third party with respect to the Noticed Defects; and

- Any other Records that may be potentially relevant to any claims, counterclaims, or defenses which may be asserted by the Purchaser or the Seller in the Potential Litigation, including, without limitation, (1) any Records that are subject to any other litigation-hold notices that the Seller or any of its Representatives previously sent/received or subsequently sends/receives in connection with the Potential Litigation, and (2) any emails, messages, texts, voicemails, or other communications that the Seller or any of its Representatives previously sent/received or subsequently sends/receives relating to any of the foregoing Topics.

For the avoidance of doubt, the Seller and its Representatives are legally obligated to immediately preserve in original form, indefinitely retain for forensic collection, and affirmatively prevent the intentional or unintentional alteration, deletion, destruction, or modification of, any Potentially Relevant Evidence until you receive further written notice from the Purchaser or its counsel. Failure to comply with the foregoing obligation may expose the Seller and its Representatives to personal liability for unlawful spoliation of evidence, including monetary penalties, judicial sanctions, adverse inference rulings, dismissal of counterclaims or defenses, and other legal remedies under the Federal Rules of Civil Procedure and applicable federal and state law.

6 / 6

Please contact me immediately at Jason@GoldsmithPLLC.com or (214) 414-9452 to discuss this important legal matter.[7]

Sincerely,

*J. Goldsmith*

Jason Goldsmith
Managing Member

cc:   Via Overnight Courier (UPS #1Z21A9640199169154)
      Quontic Bank
      3105 Broadway, 2nd Floor
      Astoria, NY 11106
      Attention: George Lazaridis

cc:   Via electronic mail:

      George Lazaridis (glazaridis@quonticbank.com)
      Rob Russell (rrussell@quonticbank.com)
      Mike Lantz (mlantz@quonticbank.com)
      Paul Bate (pbate@quonticbank.com)
      Donna Hubert (dhubert@quonticbank.com)
      John Kaufman (jkaufman@quonticbank.com)

---

[7] Neither the delivery of this notice on behalf of the Purchaser, nor any action or inaction by the Purchaser, nor any objection or acquiescence by the Purchaser as to any action or inaction by the Seller, is intended to constitute, should be construed to constitute, or shall constitute a waiver by the Purchaser of any right or remedy that may be available to the Purchaser under the Agreement or at law or in equity, all of which rights and remedies are hereby reserved.

* Deal-tested attorneys who are secondary mortgage market experts.

EXHIBIT A

FIRST DEMAND

[ATTACHED]

Case 3:26-cv-00132-N   Document 1-3   Filed 01/16/26   Page 9 of 17   PageID 30



Goldsmith Associates PLLC
100 Crescent Court, Suite 700
Dallas, TX 75201-2144
goldsmithpllc.com

Jason Goldsmith
Managing Member
Direct:  214.414.9452
Mobile: 214.616.8248
jason@goldsmithpllc.com

1 / 2

Thursday, April 3, 2025

Via Electronic Mail & Overnight Courier (UPS Tracking #1Z21A9640193912762)

Quontic Bank
3105 Broadway, 2nd Floor
Astoria, NY 11106
Attention: James Hooper
Email: jhooper@quonticbank.com

Re:  Demand for Cure or Repurchase — NexBank Mortgage Loan # 64051981
     Quontic Bank Loan # 2107QB040496

James,

    This firm represents NexBank (the "Purchaser") and we provide this notice (this "Notice") on its behalf pursuant to Subsection 7.01(d) of that certain Loan Purchase Agreement, dated January 31, 2022 (the "Agreement"), by and between Quontic Bank (the "Seller") and the Purchaser.[1]

    On January 31, 2022 (the "Purchase Date"), the Purchaser acquired the above-referenced Mortgage Loan (the "Noticed Loan") subject to the terms and provisions set forth in the Agreement. In Subsection 5.03(b)(v)(A) of the Agreement, the Seller represented and warranted that "the Mortgage Loan . . . is not and has not been affected by any error . . . by . . . any Covered Person . . . in connection with the origination . . . of the Mortgage Loan." In Subsection 5.03(c)(i)(G) of the Agreement, the Seller further represented and warranted that "each Mortgage Loan Document . . . complies, in both form and substance, with all Applicable Requirements . . . ." And, in Subsection 5.03(d)(i) of the Agreement, the Seller further represented and warranted that "the Mortgage Instrument . . . creates a binding, enforceable, subsisting, and valid first-priority lien" that is "properly perfected in accordance with all Applicable Laws of the jurisdiction where the Mortgaged Property is located." The Noticed Loan failed to conform with all of the foregoing representations and warranties for the following reason (the "Noticed Defect"):

> Not all vested owners of the Mortgaged Property executed, or were even identified in, the recorded Mortgage Instrument. As a result, the

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Agreement.

* Deal-tested attorneys who are secondary mortgage market experts.

16003.4288/59303v2

Mortgage Instrument is unenforceable in the jurisdiction where the Mortgage Property is located.

Consequently, the Noticed Loan is subject to a "Defect" for purposes of Subsection 7.01(d) of the Agreement. Subsection 7.01(d) of the Agreement, in turn, expressly provides that, "[i]f any Party discovers a Defect with respect to any Mortgage Loan, then such Party shall promptly provide written notice thereof (which may be delivered by email) to the other Party and the Seller shall use best efforts to cure the Defect to the Purchaser's satisfaction within thirty (30) days after . . . receipt of the Purchaser's notice thereof (the "Cure Period"). If the Seller fails to cure the Defect to the Purchaser's satisfaction on or before the expiration of the Cure Period, then the Seller shall . . . repurchase the Mortgage Loan at the Repurchase Price in accordance with Subsection 7.02 within five (5) Business Days after the expiration of the Cure Period."

As such, ***the Purchaser hereby demands that the Seller cure the Noticed Defect before May 3, 2025 (the "Cure Deadline") in accordance with Subsection 7.01(d) of the Agreement.*** If the Seller fails to cure the Noticed Defect to the Purchaser's satisfaction before the Cure Deadline, then the Seller will be required to repurchase the Noticed Loan at the Repurchase Price within five (5) Business Days after the expiration of the Cure Deadline.

I am hopeful we can resolve this matter amicably and economically. To this end, please contact me immediately at Jason@GoldsmithPLLC.com or (214) 414-9452 to discuss this important legal matter.[2]

Sincerely,

*J. Goldsmith*

Jason Goldsmith
Managing Member

cc:   Via electronic mail:

   Alan.Nowell@nexbank.com;
   lethe.yarmosh@nexbank.com

---

[2] Neither the delivery of this Notice by the Purchaser, nor any action or inaction by the Purchaser, nor any objection or acquiescence by the Purchaser as to any action or inaction by the Seller, is intended to constitute, should be construed to constitute, or shall constitute a waiver by the Purchaser of any right or remedy available at law or in equity with respect to the Noticed Loan, all of which rights and remedies are hereby reserved.

Goldsmith

* Deal-tested attorneys who are secondary mortgage market experts.

EXHIBIT B

SECOND DEMAND


[ATTACHED]

# Goldsmith

Goldsmith Associates PLLC
100 Crescent Court, Suite 700
Dallas, TX 75201-2144
goldsmithpllc.com

Jason Goldsmith
Managing Member
Direct:  214.414.9452
Mobile: 214.616.8248
jason@goldsmithpllc.com

1 / 3

Friday, May 29, 2025

Via Electronic Mail & Overnight Courier (UPS Tracking #1Z21A9640190389816)

Quontic Bank
3105 Broadway, 2nd Floor
Astoria, NY 11106
Attention: James Hooper
Email: jhooper@quonticbank.com

Re: **NOTICE OF BREACH – NEXBANK LOAN # 64051981 / QUONTIC LOAN # 2107QB040496 (THE "NOTICED LOAN")**

James,

    This firm represents NexBank (the "Purchaser") and we provide this second demand (this "Second Demand") on its behalf pursuant to Subsection 7.01(d) of that certain Loan Purchase Agreement, dated January 31, 2022 (the "Agreement"), by and between Quontic Bank (the "Seller") and the Purchaser.[1]

    On April 3, 2025, the Purchaser provided written notice to the Seller (the "First Demand") advising that the Noticed Loan was subject to a Defect (as defined in the Agreement) for purposes of Subsection 7.01(d) of the Agreement (the "Noticed Defect") and, thus, demanding that the Seller cure the Noticed Defect before May 3, 2025 or, should the Seller fail to do so, repurchase the Noticed Loan at the Repurchase Price before May 12, 2025, in each case as expressly required by Subsection 7.01(d) of the Agreement.[2] As of the date of this Second Demand, the Seller has neither cured the Noticed Defect nor repurchased the Noticed Loan in accordance with Subsection 7.01(d) of the Agreement and the contractual deadlines for doing so have long since expired.

    Consequently, the Seller not only is in continuing breach of its representations and warranties set forth in Subsection 5.03(b)(v)(A) and Subsection 5.03(c)(i)(G) for the reasons described in the First Demand (each, "Representation Breach"), but the Seller is now also in breach of its remedial obligations set forth in Subsection 7.01(d) of the Agreement for the

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Agreement.

[2] A true and correct copy of the First Demand is appended as Exhibit A hereto.

\* Deal-tested attorneys who are secondary mortgage market experts.

16003.4288/59771v3

reasons described above (the "Repurchase Breach" and, together with each Representation Breach collectively, the "Seller Breaches"). For all of the foregoing reasons:

*1.  The Purchaser hereby demands that the Seller indemnify the Purchaser, in accordance with Subsection 7.05 of the Agreement, for all costs, damages, expenses, fees (including, without limitation, attorneys' fees), liabilities, and other losses that have been or hereafter are incurred by the Purchaser in connection with, relating to, or resulting from the Seller Breaches (collectively, "Indemnifiable Losses");*

*2.  The Purchaser hereby demands that the Seller pay the Purchaser, in accordance with Subsection 7.03 of the Agreement, for all default interest that has been or hereafter is accrued pursuant thereto (collectively, "Default Interest") on the Repurchase Price and all Indemnifiable Losses, Default Interest, and other amounts payable by the Seller in connection with, relating to, or resulting from the Seller Breaches (collectively, the "Seller Payables"); and*

*3.  The Purchaser hereby demands that the Seller cure the Seller Breaches by repurchasing the Noticed Loan (the "Curative Repurchase") and by paying the Repurchase Price and all other Seller Payables specified in Schedule 1 hereto (collectively, the "Curative Payment"), in each case not later than 3:00 p.m. (Central Time) on Monday, June 9, 2025 (the "Cure Deadline").*[3]

I remain hopeful that we can resolve this matter amicably and economically notwithstanding the Seller's prior refusal to do so. That being said, in the event the Seller fails to complete the Curative Repurchase and pay the Curative Payment before the Cure Deadline set forth above, be advised that the Purchaser intends to commence a legal action against the Seller in Dallas County, Texas pursuant to Subsection 7.07 of the Agreement. To this end, ***effective immediately and until further notice, the Seller is hereby instructed to preserve and retain any and all communications, documents, information, and other materials that are in the Seller's or its employees' possession, custody, or control, and that may be potentially relevant to any claim, counterclaim, or defense arising from this matter*** (collectively, "Potentially Relevant Evidence"). For the avoidance of doubt, Potentially Relevant Evidence includes, without limitation, any and all communications such as emails, voicemails, and text

---

[3] As of the date of this Second Demand, the Curative Payment is $424,940.70, including Indemnifiable Losses for attorney's fees in the amount of $1,200.00 and Default Interest in the amount of $2,691.06. These figures are calculated based upon an assumption that the Seller repurchases the Noticed Loan in strict accordance with the Agreement on or before the Cure Deadline. Needless to say, these figures will continue to increase in the event the Seller fails to do so before the Cure Deadline.

Goldsmith

* Deal-tested attorneys who are secondary mortgage market experts.

messages exchanged on mobile devices or software platforms (e.g., Bloomberg, Teams, Telegram, WhatsApp, Signal, etc.); financial reports and statements; writings; printings; slides; computer records; tapes; discs; designs; plans; drawings; backup tapes or records; portable data storage devices; programs; software; printouts; brochures; schedules; charts; spreadsheets; canceled checks; statements; computer memory; memoranda of conversations; handwritten or typed notes; interoffice communications; letters; diaries; publications; faxes; and data compilations.

Please contact me immediately at Jason@GoldsmithPLLC.com or (214) 414-9452 to discuss this important legal matter. The Purchaser reserves all rights and remedies.[4]

Sincerely,

*J. Goldsmith*

Jason Goldsmith
Managing Member


cc:   Via electronic mail:

   Alan.Nowell@nexbank.com;
   lethe.yarmosh@nexbank.com

---

[4] Neither the delivery of this Second Demand by the Purchaser, nor any action or inaction by the Purchaser, nor any objection or acquiescence by the Purchaser as to any action or inaction by the Seller, is intended to constitute, should be construed to constitute, or shall constitute a waiver by the Purchaser of any right or remedy available at law or in equity with respect to the Noticed Loan or the Seller Breaches, all of which rights and remedies are hereby reserved.

Goldsmith

\* Deal-tested attorneys who are secondary mortgage market experts.

EXHIBIT A

FIRST NOTICE

[ATTACHED]

16003.4288/59771v3

# Goldsmith

Goldsmith Associates PLLC
100 Crescent Court, Suite 700
Dallas, TX 75201-2144
goldsmithpllc.com

Jason Goldsmith
Managing Member
Direct: 214.414.9452
Mobile: 214.616.8248
jason@goldsmithpllc.com

1 / 2

Thursday, April 3, 2025

Via Electronic Mail & Overnight Courier (UPS Tracking #1Z21A9640193912762)

Quontic Bank
3105 Broadway, 2nd Floor
Astoria, NY 11106
Attention: James Hooper
Email: jhooper@quonticbank.com

Re:  Demand for Cure or Repurchase — NexBank Mortgage Loan # 64051981
      Quontic Bank Loan # 2107QB040496

James,

  This firm represents NexBank (the "Purchaser") and we provide this notice (this "Notice") on its behalf pursuant to Subsection 7.01(d) of that certain Loan Purchase Agreement, dated January 31, 2022 (the "Agreement"), by and between Quontic Bank (the "Seller") and the Purchaser.[1]

  On January 31, 2022 (the "Purchase Date"), the Purchaser acquired the above-referenced Mortgage Loan (the "Noticed Loan") subject to the terms and provisions set forth in the Agreement. In Subsection 5.03(b)(v)(A) of the Agreement, the Seller represented and warranted that "the Mortgage Loan . . . is not and has not been affected by any error . . . by . . . any Covered Person . . . in connection with the origination . . . of the Mortgage Loan." In Subsection 5.03(c)(i)(G) of the Agreement, the Seller further represented and warranted that "each Mortgage Loan Document . . . complies, in both form and substance, with all Applicable Requirements . . . ." And, in Subsection 5.03(d)(i) of the Agreement, the Seller further represented and warranted that "the Mortgage Instrument . . . creates a binding, enforceable, subsisting, and valid first-priority lien" that is "properly perfected in accordance with all Applicable Laws of the jurisdiction where the Mortgaged Property is located." The Noticed Loan failed to conform with all of the foregoing representations and warranties for the following reason (the "Noticed Defect"):

    Not all vested owners of the Mortgaged Property executed, or were
    even identified in, the recorded Mortgage Instrument. As a result, the

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Agreement.

* Deal-tested attorneys who are secondary mortgage market experts.

16003.4288/59303v2

Mortgage Instrument is unenforceable in the jurisdiction where the Mortgage Property is located.

Consequently, the Noticed Loan is subject to a "Defect" for purposes of Subsection 7.01(d) of the Agreement. Subsection 7.01(d) of the Agreement, in turn, expressly provides that, "[i]f any Party discovers a Defect with respect to any Mortgage Loan, then such Party shall promptly provide written notice thereof (which may be delivered by email) to the other Party and the Seller shall use best efforts to cure the Defect to the Purchaser's satisfaction within thirty (30) days after . . . receipt of the Purchaser's notice thereof (the "Cure Period"). If the Seller fails to cure the Defect to the Purchaser's satisfaction on or before the expiration of the Cure Period, then the Seller shall . . . repurchase the Mortgage Loan at the Repurchase Price in accordance with Subsection 7.02 within five (5) Business Days after the expiration of the Cure Period."

As such, **the Purchaser hereby demands that the Seller cure the Noticed Defect before May 3, 2025 (the "Cure Deadline") in accordance with Subsection 7.01(d) of the Agreement.** If the Seller fails to cure the Noticed Defect to the Purchaser's satisfaction before the Cure Deadline, then the Seller will be required to repurchase the Noticed Loan at the Repurchase Price within five (5) Business Days after the expiration of the Cure Deadline.

I am hopeful we can resolve this matter amicably and economically. To this end, please contact me immediately at Jason@GoldsmithPLLC.com or (214) 414-9452 to discuss this important legal matter.[2]

Sincerely,

*J. Goldsmith*

Jason Goldsmith
Managing Member

cc:   Via electronic mail:

    Alan.Nowell@nexbank.com;
    lethe.yarmosh@nexbank.com

---

[2] Neither the delivery of this Notice by the Purchaser, nor any action or inaction by the Purchaser, nor any objection or acquiescence by the Purchaser as to any action or inaction by the Seller, is intended to constitute, should be construed to constitute, or shall constitute a waiver by the Purchaser of any right or remedy available at law or in equity with respect to the Noticed Loan, all of which rights and remedies are hereby reserved.

Goldsmith

* Deal-tested attorneys who are secondary mortgage market experts.